UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AKOV ORTIZ, : | |
|     Plaintiff, : | |
| : | |
| v. : | CASE NO. 3:11-cv-1793 (SRU) |
| : | |
| LEO C. ARNONE, : | |
|     Defendant. : | |

## RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER [Doc. # 10]

Plaintiff Akov Ortiz, incarcerated and *pro se*, has filed a complaint under 42 U.S.C. § 1983 challenging the Department of Correction policy banning any printed material containing nudity or sexual activity as violating his First Amendment rights.  He now seeks preliminary injunctive relief preventing implementation of the policy, which became effective June 30, 2012, and permitting him to continue receiving nude photographs magazines such as Playboy and Penthouse.  For reasons that follow, Ortiz' motion is denied.

Interim injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis, internal quotation marks and citation omitted).  Preliminary injunctive relief is designed "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).

To obtain preliminary injunctive relief, the moving party must establish "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of hardships tipping decidedly in favor of the moving party." *Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks and citation omitted), *cert. denied*, ___ U.S. ___, 131 S. Ct. 415 (2010).

If a party seeks a mandatory injunction, *i.e.*, an injunction that alters the status quo by commanding the defendant to perform a positive act, he must meet a higher standard.  "[I]n addition to demonstrating irreparable harm, '[t]he moving party must make a clear or substantial showing of a likelihood of success' on the merits, . . . a standard especially appropriate when a preliminary injunction is sought against government." *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citations omitted).  Questionable claims would not meet the likelihood of success requirement. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 340 (1999).  Here, the plaintiff seeks to change the status quo by enjoining enforcement of departmental policy.  Thus, he must meet this higher standard.

Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases.  *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997).  Where, as here, "the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." 7 James W. Moore, et al., *Moore's Federal Practice* ¶ 65.04[3] (2d ed. 1995).  Upon review of the record, the court determines that oral testimony and argument are not

necessary in this case.

The defendants argue that Ortiz cannot make a substantial showing of likelihood of success in the underlying action to warrant a mandatory preliminary injunction. In addition, the defendants argue that entering the requested injunction would improperly interfere with prison operations.

Although prisoners do no forfeit all of their constitutional rights upon incarceration, the fact of incarceration and the needs of the prison system impose limitations on prisoners' constitutional rights, even those derived from the First Amendment. *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977). Thus, Ortiz retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995) (citing *Jones*, 433 U.S. at 125); *see also Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, ___ U.S. ___, 132 S. Ct. 1510, 1511 (2012) (prison regulations impinging on inmates' constitutional rights must be upheld if they are reasonably related to legitimate penological interests).

When reviewing prison policies and practices, the federal court must exercise judicial restraint because "'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.'" *Giano*, 54 F.3d at 1053 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The Supreme Court directs the courts to review prison policies that impact constitutional rights under a reasonableness standard. A prison regulation would be upheld "if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. In *Turner*, the Court set forth four factors to consider in evaluating the reasonableness of a prison regulation:

(1) whether there is a valid and rational connection between the prison regulation and the legitimate government interest proffered to justify it; (2) whether the prisoner has an alternate means of exercising his constitutional right; (3) the impact that accommodating the prisoner's constitutional right would have on correctional staff, other inmates and the allocation of prison resources; and (4) whether there are ready alternatives to the prison regulation. *Id.* at 89-90. The burden falls on the prisoner to show that the regulation is unreasonable. *Giano*, 54 F.3d at 1054.

      Other courts analyzing prison regulations banning sexually explicit materials have applied the *Turner* factors. The defendant states that the policy was implemented to promote institutional safety and security, avoid detrimental effects on rehabilitation, prevent inappropriate behavior and create a less-offensive and non-hostile work environment. He has provided affidavits from several correctional officials who have studied the issue and concluded that the ban is an appropriate and rational way to achieve these results. The regulation is neutral; it bans sexually explicit material due to the impact on prison security, regardless of gender or sexual orientation. *See Thornburgh v. Abbott,* 490 U.S. 401, 415-16 (1989) ("Where, as here, prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are 'neutral' in the technical sense in which we meant and used that term in *Turner*."). Prison security and safety are legitimate governmental objectives. *See id.* at 415 (prison security is a legitimate governmental purpose "central to all other corrections goals") (quotations omitted); *Mauro v. Arpaio,* 188 F.3d 1054, 1059 (9th Cir. 1999) ("[T]here is no doubt that protecting the safety of guards in general is a legitimate interest, and that reducing sexual harassment in particular . . . is legitimate."). Courts upholding similar policies concur with the officials' assessment. *See Jones v. Salt Lake Cnty.,* 503 F.3d 1147,

1155-56 (10th Cir. 2007) ("The jail's ban on inmate access to 'sexually explicit material' . . . is expressly aimed at advancing jail security and . . . protects the safety of jail personnel and other inmates."); *Mauro,* 188 F.3d at 1059 (noting the relationship between the jail's policy of prohibiting sexually explicit materials and the goals of preventing sexual harassment, inmate rehabilitation, and jail security is not so "remote as to render the policy arbitrary or irrational").

Ortiz argues that the stipulated agreement, submitted by the defendant to show that the policy is required to promote a non-hostile work environment and address sexual harassment of female correctional officers, does not support the policy. He contends that the stipulated agreement focuses on sexual harassment of female correctional officers by male staff members, not by inmates. Although the conduct of male correctional staff is the primary focus of the agreement, there are references to a hostile work environment. *See, e.g.*, Doc. # 22, Attachment B, ¶¶ 64, 76. Subjecting female correctional staff to sexually explicit photographs and magazines contributes to a hostile work environment. Thus, Ortiz' argument fails.

Regarding the second factor, Ortiz has alternative ways of expressing his constitutional right. The defendant notes that Ortiz may receive a wide range of publications that do not depict nudity or pornography as well as sexually explicit materials of a literary, artistic, educational or scientific nature. *See* Doc. # 22, Garnett Affidavit, ¶¶ 12, 20. These alternatives provide Ortiz a means of exercising his constitutional rights. *See Thornburgh,* 490 U.S. at 418 ("As the regulations at issue . . . permit a broad range of publications to be sent, received, and read, [the second *Turner* factor] is clearly satisfied."); *Mauro,* 188 F.3d at 1061 (finding second *Turner* factor met where prison regulation did not ban sexually explicit letters between inmates and others or sexually explicit articles or photographs of clothed females); *see also Giano*, 54 F.3d at

1056 (upholding ban on nude photographs of inmates' wives or girlfriends and noting that First Amendment rights could be expressed through conventional photographs and romantic letters).

The court considers together the last two *Turner* factors, the impact that accommodating Ortiz' constitutional right would have on correctional staff and the allocation of prison resources and any alternatives to the prison regulation. The defendant states that a committee was formed to evaluate these two factors before the policy was implemented. The committee evaluated the possibility of a partial ban of sexually explicit materials, one that would permit inmates to receive magazines like Playboy and Penthouse. The committee concluded that a partial ban would require an ongoing monitoring system that would result in subjective determinations regarding what materials would be permitted. Such a system would be difficult to codify, financially costly and labor intensive. *See* Doc. # 22, Garnett Affidavit, ¶¶ 14, 16. The committee also considered having a different standard for sex offenders. They rejected this option because there is no easy way to restrict the flow of materials through the prison and prevent sex offenders from seeing materials in the possession of other inmates. *See id.* ¶ 17. In addition, restricting possession of sexually explicit materials to only some inmates would not address the problem of creating a non-hostile work environment for staff who find such materials objectionable or prevent inmates from engaging in sexual acts or aggressive behavior after viewing the materials. *See id.* ¶¶ 18, 21. Further, a partial ban would not address the fact that many correctional employees are uncomfortable handling inmates' sexually explicit materials, resulting in their hiding contraband in such materials. *See* Doc. # 22, Dzurenda Affidavit, ¶¶ 6-8. The defendant has presented evidence establishing the third and fourth *Turner* factors.

Ortiz has not established a likelihood of success on the merits of his claim at this time.

*See George v. Lamey*, No. CV 06-41 GFSEH, 2007 WL 118912, at *3 (D. Mont. Jan. 8, 2007) (dismissing as frivolous challenge to prison policy prohibiting inmates from possessing or receiving sexually explicit material).

Ortiz' motion for preliminary injunction and temporary restraining order [**Doc. # 10**] is **DENIED**.

**So ordered** at Bridgeport, Connecticut this 11th day of September 2012.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge